UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:19-CV-00161-HBB

**RAYMOND GROVES**                                                                                                   **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

BACKGROUND

Before the Court is the complaint (DN 1) of Raymond Groves ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered April 8, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On March 17, 2016, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 26, 157-63). Plaintiff alleged that he became disabled on November 4, 2015, as a result of a noncancerous tumor on the left side of the brain; he underwent suboccipital surgery for acoustic neuroma which resulted in hearing loss due to the removal of his left eardrum and all nerves, including the balance nerve, on the left side of his head; he still has three brain tumors and they are closely monitored every six months; at age 13 a tumor was removed from right front skull which resulted in the right front forehead being reconstructed; he is easily winded and experiences difficulty breathing which may be COPD; he has rheumatoid arthritis; he has high blood pressure; he has Von Recklinghausen Disease type III; and he experiences headaches (Tr. 27, 72). On April 16, 2018, Administrative Law Judge John R. Price ("ALJ") conducted a hearing in Paducah, Kentucky (Tr. 44-46). Plaintiff and his attorney, Christopher Rhoades, appeared in person (Id.). Kenneth Boaz, an impartial vocational expert, testified by telephone during the hearing (Id.).[1]

In a decision dated September 10, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 26-38). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 4, 2015, the alleged onset date (Tr. 29). At the second step, the ALJ determined that Plaintiff has the following severe impairments: hearing loss and headaches status-post acoustic

---

[1] In contrast to the hearing transcript, the ALJ's decision indicates he conducted a video hearing from Louisville, Kentucky (Tr. 27). The decision also indicates that Plaintiff and his attorney, Christopher Rhoads, participated from Madisonville, Kentucky (Id.). The decision indicates that Kenneth Boaz, an impartial vocational expert, participated by telephone (Id.). The Court merely notes the conflict between what is set forth in the hearing transcript and the ALJ's decision.

neuroma resection; chronic obstructive pulmonary disease; degenerative disc disease; and degenerative joint disease (Id.). The ALJ also determined that Plaintiff's obesity is a "non-severe" impairment because there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.). At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work except that he is limited to: lifting 20 pounds occasionally and 10 pounds frequently; no ladders, ropes, and scaffolds; only occasional ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoidance of concentrated dust, gas, fumes, and other pulmonary irritants; avoidance of hazards, such as unprotected heights and dangerous moving machinery; avoidance of bright light situations like outdoor sunlight; avoidance of more than moderate level of noise; and needing an option to sit and stand in 30 minute intervals throughout the workday and take a minute or two to change position from seated to standing or vice versa (Tr. 30-31). Additionally, the ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any past relevant work (Tr. 35).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 36-37). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 4, 2015 through the date of the decision (Tr. 37).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 156). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

   5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Prejudgment Remand

1. Arguments of the Parties

Plaintiff argues the case should be remanded, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of a single treatment note from Dr. James Carter Dodds dated December 13, 2018 (DN 14-1 PageID # 1338-39, citing Tr. 9-17). Plaintiff contends this "new" evidence showing that ongoing treatment of his left knee ultimately resulted in a total knee replacement is "material," and there is "good cause" for not submitting it to the ALJ because it post-dates the decision (Id.).

Defendant's challenge is limited to whether the treatment note is "material" (DN 20 PageID # 1365-67). Defendant asserts the treatment note is not "material" because, other than indicating Plaintiff was a candidate for a left knee replacement, it contains evidence that is cumulative of the objective and subjective evidence in the record that was fully considered by the ALJ (Id. citing Tr. 29-31, 33, 1109-11, 1124, 1126-27).

2. Discussion

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon ex rel. Hollon v. Comm'r of

Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding." Melkonyan, 501 U.S. at 98. The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see also*, Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994). Thus, the statute sets forth a three-factor test for determining whether the Court should grant a pre-judgment remand. Faucher, 17 F.3d at 174.

The new evidence is a December 13, 2018 progress note prepared by Dr. Dodds, an orthopedist, with Baptist Health Medical Group-Orthopedics (Tr. 9-17). While Plaintiff's argument addresses all three factors, Defendant limits his challenge to the second factor.[2] Therefore, the sole question to be resolved is whether Plaintiff has demonstrated the treatment note is "material."

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001);

---

[2] Defendant's silence as to the first and third factors is deemed a concession. Notwithstanding, the Court concludes the evidence is "new" because it did not exist at the time of the administrative proceeding. *See* Melkonyan, 501 U.S. at 98; Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). "Good cause" is shown because the new evidence arises from continued medical treatment of the knee condition and was not generated merely for the purpose of attempting to prove Plaintiff's disability. *See* Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (citing Wilson v. Sec'y of Health & Human Servs., 733 F.2d 1181 (6th Cir. 1984) and Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)).

Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). Evidence is not considered "material" if it merely depicts an aggravation or deterioration in an existing condition after the date of the ALJ's decision. Sizemore, 865 F.2d at 712.

The only treatment note in the administrative record specifically addressing Plaintiff's left knee comes from Baptist Health Medical Group-Orthopedics and is dated June 21, 2017 (Tr. 1106-12).[3] Plaintiff's symptoms included a mild aching pain in his left knee which he rated on that day as a 5 on a 10-point severity scale; and a loss of motion and grinding aggravated by weight bearing (Tr. 1106). Despite his complaints, Plaintiff indicated he had "tried nothing for the symptoms" (Id.). Plaintiff exhibited an antalgic gait and the nurse practitioner's examination revealed the absence of erythema; normal sensation; mild swelling; "no effusion;" tenderness in the medial joint line and pes anserinus; and a normal range of motion for extension but an abnormal range for flexion (Tr. 1109). X-rays of Plaintiff's left knee showed moderate patellofemoral and mild lateral joint compartment degenerative arthritic change (Tr. 1110).[4] The diagnostic assessment was primary osteoarthritis of left knee, large joint arthrocentesis (Tr. 1111). The recommended treatment plan involved an intra-articular steroid injection with progression of range of motion and

---

[3] During the administrative hearing, on April 16, 2018, Plaintiff testified that he received treatment for his left knee during the summer of 2017 (Tr. 46, 56-57). But he did not testify about receiving any subsequent treatment for his left knee (Id.). Additionally, when Plaintiff filed his application, he provided a comprehensive list of medical conditions that limit his ability to work (Tr. 178). While the list identifies rheumatoid arthritis, it does not mention Plaintiff's knees (Id.). Additionally, the medical evidence from Dr. Hardison and Baptist Health Medical Group, addressing the time frame May 2016 through October 2017, indicates Plaintiff made general complaints about cervical spine, shoulder, and knee pain and tenderness throughout his musculoskeletal system (*see e.g.*, Tr. 775-77, 889-90, 1109-11, 1124, 1126-27). The treating source comments indicate Plaintiff's degenerative joint disease was controlled, examinations revealed some tenderness in his musculoskeletal system, and he had a normal range of motion (Id.).

[4] X-rays of Plaintiff's right knee showed moderate tricompartmental osteoarthritic degenerative changes, greatest in the medial lateral joint compartments (Tr. 1110).

activity as tolerated based on pain, and a follow-up appointment in one month (Id.). The ALJ relied on this medical evidence and Plaintiff's testimony in making findings at steps two, three, and four.[5] At step four, the ALJ found that Plaintiff has the RFC to perform light work with certain exertional,[6] postural,[7] and environmental limitations[8] (Tr. 30-31, Finding No. 5). At step four, the ALJ relied on the vocational expert's testimony to find Plaintiff is not capable of returning to his past relevant work[9] (Tr. 35-36, Finding No. 6). At step five, the ALJ relied on the vocational expert's testimony to find, considering Plaintiff's age, education, work experience, and RFC, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 36-37). The decision issued on September 10, 2018 (Tr. 26-38).

Contrary to Plaintiff's assertion, the new medical evidence does not show he received a total knee replacement on December 7, 2018, just three months after the ALJ's unfavorable decision (*compare* DN 14-1 PageID # 1338, *with* Tr. 9-17). Rather, it is a December 13, 2018 progress note prepared by Dr. Dodds, an orthopedist with Baptist Health Medical Group, that

---

[5] At step two, the ALJ found Plaintiff's degenerative joint disease is a "severe" impairment (Tr. 29, Finding No. 3). At step three, the ALJ determined the degenerative joint disease did not meet or medically equal Listing 1.02 (Tr. 29, Finding No. 4).

[6] Specifically, the ALJ included "an option to sit and stand in 30-minute intervals throughout the workday and take a minute or two to change position from seated to standing or vice versa" (Tr. 31, Finding No. 5).

[7] Specifically, the ALJ included no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling (Id.).

[8] Specifically, the ALJ included avoidance of concentrated dust, gas, fumes, and other pulmonary irritants; avoidance of hazards, such as unprotected heights and dangerous moving machinery; and avoidance of bright light situations like outdoor sunlight (Id.).

[9] In response to the ALJ's hypothetical question setting forth all the limitations in the RFC finding, the vocational expert confirmed that the hypothetical individual would not be able to perform Plaintiff's past relevant work (Tr. 65-66).

concludes Plaintiff is a good candidate for a total knee replacement (Tr. 9-17). Thus, the Court cannot ascertain from this new evidence whether Plaintiff has undergone a total knee replacement and, if so, when the surgery occurred.

The December 2018 progress note indicates Plaintiff was seen for a left knee follow up, but it fails to indicate when Plaintiff was last seen (Tr. 9). It indicates Plaintiff "is ready to schedule surgery" because he is experiencing pain with daily activities, is unhappy with the quality of his life, and has tried NSAIDS, Visco, PT, HEP, activity modification, intra-articular steroid injections without improvement (Id.). Further, it reports that Plaintiff exhibited an antalgic gait, had normal left knee strength with diffuse tenderness, and had a range of motion that was -5 on extension and 120 flexion (Tr. 13). It also reveals that Plaintiff's left knee had a negative varus and drawer (anterior and posterior), normal sensation, no swelling, no effusion, crepitation with motion, and mild to moderate pain through the arc of motion (Tr. 13-14). X-rays of the left knee revealed moderate to severe medial compartmental degenerative changes (Tr. 14). The progress note sets forth a diagnostic assessment of primary osteoarthritis of the left knee and chronic pain of the left knee (Tr. 14-15).

Some examination findings in the December 7, 2018 progress note are similar or the same as examination findings in the June 21, 2017 treatment note (*compare* Tr. 1106-12, *with* Tr. 9-17). But other examination findings and the x-rays referred to in the December 7, 2018 progress note clearly show a deterioration in his condition since June 21, 2017 (*compare* Tr. 1106-12, *with* Tr. 13-14). As alluded to above, there is the absence of medical evidence in the record presenting a longitudinal view of Plaintiff' condition from June 21, 2017 through the date of the hearing and the ALJ's unfavorable decision on September 10, 2018. Moreover, the new evidence is not from

a long-term treating orthopedic physician who presents a longitudinal view of Plaintiff's condition. Thus, the new evidence which reflects Plaintiff's deteriorated condition "is not relevant because such evidence does not demonstrate the point in time that the disability itself began." *See* Sizemore, 865 F.2d at 712. For this reason, the Court concludes the "new" evidence is not "material" to Plaintiff's condition during the time adjudicated by the ALJ. Since the medical evidence demonstrates Plaintiff's condition has gotten worse, the appropriate remedy would be for him to file a new claim for benefits alleging an onset date consistent with when the condition aggravated to the point of constituting a disabling impairment. Id.

                    Residual Functional Capacity

1. Arguments of the Parties

Plaintiff asserts that substantial evidence does not support the ALJ's failure to give "great weight" to the opinion of Dr. Hardison, the treating physician (DN 14-1 PageID # 1332-34). Plaintiff claims that Dr. Hardison indicated with specificity the number of days a week Plaintiff experiences severe debilitating headaches from the brain tumors, his lifting restrictions, and the frequency he should lie down or recline (Id. citing Ex. 21F). Plaintiff argues the ALJ failed to give good reasons, based on the six factors in 20 C.F.R. § 404.11527(d)(2), for discounting the limitations (Id.). Additionally, Plaintiff contends substantial evidence does not support the ALJ's finding that he can perform light work, which involves the ability to stand and/or walk six hours of an eight-hour workday, considering his incapacitating headaches, degenerative joint disease, and COPD (DN 14-1 PageID # 1334-37). Plaintiff asserts the ALJ's summary of the evidence including the frequency of complaints to the doctor about his headaches and dizziness; x-rays showing degenerative arthritic changes in his shoulders; complaints of tenderness throughout his

musculoskeletal system; shortness of breath with exertion; abnormal flexion of his left knee; and the November 2017 MRI showing bulging discs at L3 through S1 (Id. citing Tr. 32-35).

Defendant asserts that the ALJ properly gave Dr. Hardison's vague opinions no weight and, as to Dr. Hardison's specific limitations, provided good reasons for discounting them based on the six factors in 20 C.F.R. § 404.11527(d)(2) (DN 20 PageID # 1357-59, citing Tr. 35). Defendant argues that Plaintiff does not point to any evidence the ALJ failed to consider in concluding Plaintiff can perform a range of light work (DN 20 PageID # 1359-60). Defendant contends the ALJ identified substantial evidence in the record supporting this finding and the Court should decline Plaintiff's invitation to reweigh the evidence (Id.).

1. Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

As Plaintiff filed his application prior to March 27, 2017, the rule in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record. The regulation requires Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The process of assigning weight to medical opinions in the record begins with a

determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c). Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 376 (6th Cir. 2013). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord the treating source opinion and provide "good reasons" for discounting the weight given to the treating source. 20 C.F.R. § 404.1527(c)(2); <u>Gayheart</u>, 710 F.3d at 376. The Administrative Law Judge must also consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record from non-treating and non-examining sources. 20 C.F.R. § 404.1527(c); <u>Gayheart</u>, 710 F.3d at 376.

Concerning the weight assigned to the opinions of Dr. Hardison, the pertinent part of the decision reads:

> Barry G. Hardison, M.D., stated on several occasions that the claimant was totally disabled from his conditions (Exs. 12F/20, 22; 17F/9; 20F; 21F). Dr. Hardison's opinion is given no weight as it is vague and fails to indicate any specific limitations resulting from the claimant's impairments. Specifically, his opinion that the claimant was totally disabled is a determination reserved for the Commissioner of the Social Security Administration, and therefore, such opinion is given no weight as only the Commissioner can make such a determination.
> Dr. Hardison also indicated in a letter that the claimant could not lift more than 10 pounds on occasion, could not bend over without falling, would need to take unpredictable breaks throughout the day, would need to work in a dark and quiet room up to two days a week,

> and would need to lie down or recline a few hours a day, which would cause him to miss work a few days each month. He further stated that the claimant could not participate in light, medium, or heavy exertional work (Ex. 21F). Little weight is given to Dr. Hardison's opinion, as his severe restrictions are not consistent with the record as a whole. Specifically, although the record shows the claimant has problems with breathing, headaches, and joint and back pain at times, numerous examinations show that he had normal respiratory findings, normal musculoskeletal findings, normal neurological findings, and normal pulmonary function testing and normal diagnostic imaging of his lungs. Additionally, the claimant had improvement of his headaches with use of Topomax, treated his complaints of headaches conservatively, and only went to the emergency room one time due to headaches despite his severe allegations. Furthermore, the claimant had improvement with his balance with therapy after his surgery, never had additional treatment for balance issues, and although he had hearing loss in his left ear, it was noted during multiple examinations that his hearing was normal at conversation level (Exs. 2F/53-54; 3F/3; 4F/6; 7F/1-3; 9F/11-13, 24, 28-33; 10F/1-3; 12F/20-21; 13F/3-4, 23; 15F/4-6; 17F/1-2, 8-9, 12-13, 28-29; 22F/9-10). Accordingly, the record supports the finding that the claimant is capable of performing light exertional work with additional limitations.

(Tr. 35). Regarding the first paragraph in the above assessment, the ALJ appropriately gave Dr. Hardison's opinions no weight because they address an issue reserved to the Commissioner (Tr. 35 citing Tr. 889, 891, 1127, 1219). 20 C.F.R. § 404.1527(d).

As to the second paragraph in the above assessment, although the ALJ could have been more explicit, it is readily apparent that the ALJ concluded Dr. Hardison's opinion, dated March 29, 2018, was not entitled to "controlling weight" because it was inconsistent with other substantial evidence in the record (Tr. 35, citing Tr. 1222-25). Further, contrary to Plaintiff's assertion, the ALJ provided "good reasons" that are based on the factors in paragraphs (c)(1)-(6) of this section. 404.1527(c); Gayheart, 710 F.3d at 376. In sum, the ALJ's assignment of weight to the opinions of Dr. Hardison are supported by substantial evidence and comport with applicable law.

The ALJ assigned great weight to the to the opinions of the non-examining state agency medical consultants (Tr. 34). After reviewing the evidence in the record and the decision, the Court concludes the ALJ's assignment of weight is supported by substantial evidence in the record and comports with applicable law. 404.1527(c); Gayheart, 710 F.3d at 376.

After reviewing the evidence in the record and the decision, the Court finds that the ALJ articulated substantial evidence in the record that supported his finding the Plaintiff has the RFC to perform light work with certain exertional,[10] postural,[11] and environmental limitations[12] (Tr. 30-31 Finding No. 5). Further, the ALJ found from the medical evidence and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent he testified (Tr. 31-36). The exertional, postural, and environmental limitations in the RFC address Plaintiff's medical conditions to the extent the ALJ found Plaintiff's pain and other symptoms are supported by the evidence in the record (Id.). In sum, the ALJ's RFC findings are supported by substantial evidence in the record and comport with applicable law.

---

10 Specifically, the ALJ included "an option to sit and stand in 30-minute intervals throughout the workday and take a minute or two to change position from seated to standing or vice versa" (Tr. 31, Finding No. 5).

11 Specifically, the ALJ included no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling (Id.).

12 Specifically, the ALJ included avoidance of concentrated dust, gas, fumes, and other pulmonary irritants; avoidance of hazards, such as unprotected heights and dangerous moving machinery; and avoidance of bright light situations like outdoor sunlight (Id.).

Finding No. 10

1. Arguments of the Parties

Plaintiff contends substantial evidence does not support the ALJ's finding that there are jobs that exist in significant numbers in the national economy that he can perform (DN 14-1 PageID # 1334-36). Primarily Plaintiff argues the vocational expert relied on obsolete job descriptions in the Dictionary of Occupational Titles in expressing his opinion (Id.). Additionally, Plaintiff contends the number of jobs identified by the vocational expert do not qualify as "significant" (Id.).

Defendant contends the vocational expert's testimony constitutes substantial evidence to support Finding No. 10 (DN 20 PageID # 1360-). Further, Defendant points out that Plaintiff's argument is outdated in light of the Sixth Circuit's opinion in O'Neal II v. Comm'r of Soc. Sec., 799 F. App'x 313 (6th Cir. 2020).

2. Discussion

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a

vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making. 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

Here, the ALJ used the Grid Rule as a framework in the decision-making process and made a non-guideline determination based on the testimony of a vocational expert (Tr. 36-37, Finding No. 10). In response to the ALJ's hypothetical question, the vocational expert confirmed that the individual could perform other jobs in the national economy including monogram machine tender (Dictionary of Occupational Titles Number 583.685-046 [*hereinafter* "DOT No."]) and there are 80,000 such jobs in the national economy; folder in laundry (DOT No. 369.687-018) and there are 42,000 such jobs in the national economy; and ticket taker (DOT No. 344.667-010) and there are 30,000 such jobs in the national economy (Tr. 66-67). The ALJ relied on the vocational expert's testimony to find-considering Plaintiff's age, education, work experience, and RFC-Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 36-37, Finding No. 10).

The Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010)

(emphasis added). Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step. *See e.g.* Wright v. Berryhill, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); Westmoreland v. Berryhill, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); Rollston v. Comm'r of Soc. Sec., No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016). Other district courts within the Sixth Circuit criticized Cunningham's reasoning and declined to follow its holding. *See e.g.* Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); Montano v. Comm'r of Soc. Sec., No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts. O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020). Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy. Id.

Applying the holding in O'Neal to the circumstances before the Court, Plaintiff did cross-examine the vocational expert (Tr. 67-69). But Plaintiff failed to cross-examine the vocational expert about the obsolescence of the DOT's descriptions for these three jobs (Id.). Considering the holding in O'Neal, the vocational expert's testimony constitutes substantial evidence to support

18

ALJ's finding that Plaintiff is able to perform his past relevant work as generally performed, not as Plaintiff performed that job.

Contrary to Plaintiff's assertion, the vocational expert identified a significant number of jobs that plaintiff could perform, which is the legal standard that the Commissioner must meet. See e.g., McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); accord Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally). In sum, Finding No. 10 is supported by substantial evidence in the record and comports with applicable law.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

November 6, 2020

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:     Counsel